### THE HARLEM RIVER NO. 2.

#### (Circuit Court of Appeals, Second Circuit. June 14, 1910.)

#### No. 240.

TOWAGE (§ 11*)—INJURY TO TOW, BY STRIKING BRIDGE PIER—LIABILITY OF TUG.

A tug with a loaded coal barge on each side was passing up Harlem river, and when about to pass through the east draw of the Willis Avenue Bridge a large tug with a car float at her side appeared across the channel in front, entirely obstructing the passage, and in endeavoring to back out, there being an ebb tide running up the river and strongly against the eastern bank, the barge on the port side of the tug struck against an obstruction four feet below the high-water line on the piling around the central pier of the bridge and was injured. The east draw was 120 feet wide, and the tug and tows were 61 feet. The west draw was obstructed by vessels which prevented a view up the river. *Held*, that the tug was not negligent and could not be held responsible for the combination of circumstances which placed her in a position from which she could not extricate herself without great danger of striking one side or the other even by the most careful navigation, nor was it a fault that her master did not know of the submerged obstruction which caused the injury.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Warren A. Leonard against the steam tug Harlem River No. 2; James H. McConnell, claimant. Decree for respondent, and libelant appeals. Affirmed.

On appeal from a decree dismissing a libel filed by the owner of the scow-barge Isabella against the steam tug Harlem River No. 2, charging the tug

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with negligent towage in bringing the barge into collision with the central abutment of the Willis Avenue Bridge, which crosses the Harlem river.

On the morning of September 18, 1907, the Isabella laden with coal was taken in tow by the steam tug Harlem River No. 2 at 96th street, East river, destined for 136th street, Harlem river. The Isabella was on the port side of the tug and another coal barge, the Eureka, was upon her starboard side. The tide was ebb, running from two to three knots an hour and, at the Willis Avenue Bridge, set strongly across towards the Bronx side of the river and against the right-hand abutment, which was of stone. The left-hand draw of the bridge was, at the time in question, filled with car floats with cars thereon, making it impossible to see through the draw and up the river beyond. When the No. 2 was about 250 feet from the bridge her pilot observed Transfer No. 7 with a large car float crossing from the Manhattan to the Bronx side of the river, directly across the passageway which he was to take. Seeing that it was impossible to pass, he reversed and, in order to avoid striking the stone abutment on the Bronx side, brought the port quarter of the Isabella against the central pier, causing the injury complained of.

Carpenter & Park, for appellant.

James J. Macklin and De Lagnel Berier, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge (after stating the facts as above). The combination of circumstances which brought about the collision with the central abutment of the bridge was one for which the tug cannot be held responsible. The tide was ebb, setting upstream towards the Hudson river and against the Bronx abutment of the bridge. The tug was proceeding up the river with a tow on each side, the Isabella on the port side and another coal barge, the Eureka, on the starboard side. The Isabella was towed stern first at the request of her master, the entire width of the flotilla being about 61 feet. The width of the draw on the Bronx side was 120 feet, leaving a space of about 30 feet on either side, assuming that the tug navigated directly in the center of the draw. The Manhattan side of the draw was choked with car floats, making it impossible to see up the river on that side for some distance. As the No. 2 approached, the large tug No. 7, with a railroad float loaded with cars on her starboard side, projected herself without warning directly across the draw. The No. 2 was confronted with a sudden peril for which she was in no way responsible. She could not proceed on her course without collision with the float. As the tide was setting across the draw, it was a difficult manœuvre to back without coming in contact either with the piling surrounding the central abutment or with the Bronx abutment, which was of stone. She did collide with the piling around the central abutment. No fault can be predicated of her action in this regard. It would have been remarkable if she had been able to stop and back her unwieldy tow against a cross tide without striking one or the other of these abutments. It is said that she should have signalled her intention to go through the draw, but we are referred to no rule requiring her to do so. She was navigating on the right-hand side of the river, intending to pass through the right-hand draw. There were no boats coming down the river and apparently her course was clear. Undoubtedly there was grave fault somewhere—first, in permitting the car floats to tie up in the western draw, not only obstructing the chan-

nel but the view of navigators going up and down the river; second, in permitting the piling around the central pier to become out of order, and third, in permitting the unwieldy car float to close up the easterly draw without warning of her intention so to do. For these faults, however, the No. 2 is in no way responsible. It is said that she should have had a lookout, but we fail to see how a lookout would in any way have averted the disaster. He could have seen nothing which the pilot of the tug failed to observe. It is true that one of the witnesses, the master of the steam tug Mattie, which was following the No. 2, says that he saw the railroad float crossing the eastern draw when he was at 122d street, which is four blocks from the bridge, but later on in his testimony he makes it clear that it was not his intention to convey this impression. He says that when he saw No. 7 she was entering her slip on the Bronx side of the river and entirely clear of No. 2 and her tow and that he did not see the car float when it was obstructing the passage. Indeed, from the testimony and the diagrams furnished, we think it would be well nigh impossible to see the car float at the point first indicated by the witness.

This brings us to what are practically the only questions in dispute, namely: Was the Isabella injured by contact with the central pier, and if so, was the injury occasioned by conditions the existence of which the master of the tug knew or ought to have known? Assuming that the first question should be answered in the affirmative, we proceed to an examination of the second. The master testified that he did not know the condition of the spiling around the central pier below the high-water line. The testimony indicates that the obstacle which caused the injury to the Isabella was over four feet below the high-water line. A witness who made photographs at low water, after the accident, testifies to the dilapidated condition of the central pier, but we think it would be establishing too stringent a rule to hold tugs liable because their masters are not acquainted with the condition of the abutments of all the drawbridges along the river which are only visible at low water. In view of all the circumstances we cannot say, having in mind the other perils which confronted him, that the master of the No. 2 was at fault by reason of the contact with the central pier. The tug was neither a common carrier nor an insurer. The highest possible degree of skill and care was not required of her. A pilot navigating a narrow, crowded tidal stream crossed by many bridges is sufficiently occupied in avoiding visible perils and should not be charged with fault because, for instance, he is unaware of submerged projecting bolt heads in the piling of an abutment which, except in case of an unforeseen emergency, could not cause injury to his tow.

The decree is affirmed, with costs.